**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| G&G Closed Circuit Events LLC, | No. CV-18-02836-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Leila Venegas Alcantara, *et al.*, | |
| Defendants. | |

At issue is Plaintiff G&G Closed Circuit Events LLC's Motion for Summary Judgment (Doc. 41, MSJ), to which Defendants Leila Venegas Alcantara and Giselle, LLC filed a Response and Cross Motion for Summary Judgment (Doc. 51, Defs.' Resp. & CMSJ), and Plaintiff filed a Reply (Doc. 53, Pl.'s Reply). Plaintiff also filed a Response to Defendants' Cross Motion for Summary Judgment (Doc. 55, Pl.'s Resp.) and Defendants filed a Reply (Doc. 56, Defs.' Reply). For the reasons stated below, the Court will grant in part and deny in part Plaintiff's Motion for Summary Judgment and will deny Defendants' Cross Motion for Summary Judgment.

**I.   BACKGROUND**

Plaintiff is a closed-circuit distributor of sports and entertainment programming. (Doc. 41-2, Plaintiff's Affidavit in Support of Plaintiff's MSJ ("Gagliardi Aff.") ¶ 3.) It entered into a Licensing Agreement with Golden Boy Promotions, LLC (the "Agreement") to purchase the exclusive nationwide commercial exhibition licensing rights to the *Gennady Golovkin v. Saul Alvarez IBF World Middleweight Championship Fight Program*

(the "Program") that took place on September 16, 2017. (Doc. 42, Plaintiff's Statement of Facts ("PSOF") ¶ 2; Gagliardi Aff. ¶ 3, Ex. 1.) It also purchased the nationwide anti-piracy enforcement rights. (PSOF ¶ 2; Gagliardi Aff. ¶ 3.) The Agreement is governed by Nevada law. (Gagliardi Aff., Ex. 1 at 7.)

Defendant Giselle LLC (the "LLC") owns the restaurant Casita Del Mar in Phoenix, Arizona. (PSOF ¶ 5.) Ms. Alcantara is a managing member and statutory agent of the LLC and is the listed Licensee/Agent on Casita Del Mar's liquor license. (PSOF ¶ 5.)

Plaintiff entered into sub-licensing agreements with commercial establishments that permitted public exhibition of the Program. Plaintiff did not enter into such an agreement with Defendants and did not otherwise give them authorization to broadcast the fight. (PSOF ¶ 9; Gagliardi Aff. ¶ 8.) The cost for Defendants to legally purchase the Program from Plaintiff would have been $2,500. (PSOF ¶ 11.)

On September 16, 2017, Gerardo Alvarez Hose, an investigator hired by Plaintiff, entered Casita Del Mar during the fight. He observed two different TVs, both of which were showing the Program. Mr. Hose counted 45 patrons in the restaurant, which holds approximately 60 people. Casita Del Mar did not charge an entry fee or raise the price on any of its menu items; however, it did advertise the event on its Facebook page with a picture of the two fighters. (Doc. 41-4, Affidavit of Gerardo Alverez Hose.)

Plaintiff subsequently filed this lawsuit, alleging violations of 47 U.S.C. § 605 and § 553. It now moves for summary judgment solely pursuant to § 605 on the LLC's liability as well as Ms. Alcantara's individual liability. Defendants cross moved for summary judgment on the same issues.

## II.    LEGAL STANDARD

### A.    Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*,

477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256-57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

### B.    The Communications Act

The Communications Act provides that "no person receiving [or] assisting in receiving ... any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney...." 47 U.S.C. § 605(a).[1] "[A]ny person aggrieved by any

---

[1] The Court notes, as Plaintiff does, that there is a split of authority among courts as to whether violations such as those alleged here implicate 47 U.S.C. § 553 as well. (MSJ at 4-5 (collecting cases).) Plaintiff, though, requests that liability be found pursuant to § 605. In recognition of *Directv, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008), as well as

violation of subsection (a) of this section or paragraph (4) of this subsection may bring a civil action in a United States district court or in any other court of competent jurisdiction." 47 U.S.C. § 605(e)(3)(A).

### III.     ANALYSIS

#### A.     The LLC's Liability Pursuant to 47 U.S.C. § 605

To establish liability under 47 U.S.C. § 605, Plaintiff must prove that the LLC unlawfully intercepted, received, published, or divulged the Program. 47 U.S.C. § 605(a). Plaintiff has met this burden. The Agreement granted Plaintiff "the exclusive license to exhibit Promoter's live simultaneous HBO-PPV telecast only within the Fifty States of the United States of America…" Plaintiff has additionally produced evidence that "G&G Closed Circuit Events, LLC purchased and retains the exclusive commercial distribution rights [and] no other company was authorized to transmit the Program to Defendants." (Gagliardi Aff. ¶ 3.) Defendants do not deny that they displayed the Program on September 16, 2017 without paying the licensing fee.

Instead, Defendants attempt to attack Plaintiff's rights under the Agreement in a variety of ways. Defendants contend that Plaintiff did not have the exclusive nationwide distribution rights to the Program and thus is not an aggrieved party pursuant to § 605. In support, they cite the Agreement's provision stating that Plaintiff has the right to the "live simultaneous HBO-PPV telecast (the 'Telecast') of the [Program]" (Defs.' Resp. & CMSJ at 9; Defs.' Controverting Statement of Facts ("DCSOF" ¶ 2.) Defendants appear to suggest, based on the Agreement's language, that there was some other distribution right to the Program within the United States, and thus the HBO-PPV was not the exclusive provider of the Program in the United States. But suggestion is not evidence. Plaintiff has produced evidence that it had the exclusive nationwide rights to the Program (Gagliardi Aff. ¶ 3).[2] Defendants have not produced any evidence to the contrary. The plain language

Plaintiff's request, the Court will analyze Plaintiff's Motion under § 605 and treat Count II of Plaintiff's Complaint, brought under § 553, as surrendered. *See Kingvision Pay-Per-View, Ltd. v. Body Shop*, 2002 WL 393091, at *4 (S.D.N.Y. Mar. 13, 2002) ("it is well-established that, when a defendant's conduct violates both Sections 553 and 605, Plaintiff may only recover damages pursuant to one of them").

- 4 -

of the Agreement stating that Plaintiff has the rights to the HBO-PPV is evidence of its exclusive nationwide right. It certainly does not create a controverted issue of fact.

To the extent that Defendants argue that their alleged subscription to SKY Television is evidence that there were other legal providers of the Program in the United States, this argument fails. Defendants did not produce evidence that SKY Television was permitted to show the Program in the United States, or even that they had a valid subscription. In fact, the terms of service for SKY Television expressly state that the "service is only available within the Mexican Republic." (Pl.'s Reply at 4.) Defendants do not explain how they obtained a lawful subscription to SKY Television in the United States.

Alternatively, Defendants argue that the Agreement itself is not valid because the date on the first page is May 21, 2018, even though the Agreement was signed on September 16, 2017. (Defs.' Resp. and CMSJ at 4-5.) Without additional evidence, this is mere conjecture from a non-party to the Agreement and is insufficient to create a factual dispute as to its validity. Notably, Defendants do not cite any caselaw where a third party successfully challenged a contract's validity due to an errant date. Likewise, Defendants contend that Plaintiff could not have fulfilled certain obligations set forth in the Agreement and thus the Agreement is not valid. (Defs.' Resp. and CMSJ at 4-5.) Defendants fail to offer any actual evidence that Plaintiff did not fulfill its obligations under the Agreement's terms. Unsupported, speculative allegations are insufficient to create a factual dispute at summary judgment. *Nelson v. Pima Cmty. Coll.,* 83, F.3d 1075, 1081-82 (9th Cir. 1996.)

Finally, Defendants argue that Plaintiff does not have standing to sue because it did not act jointly with the promoter as required by the Agreement. (Defs.' Resp. & CMSJ at 5-9.) However, the plain language of the Agreement and principles of contract

---

[2] Additionally, the Copyright Assignment Agreement, attached as Exhibit A to the Agreement, expressly states that Golden Boy Promotions, Inc., the Assignor, "wishes to transfer its exclusive ownership and interest in the performance and transmission of the Work in commercial establishments… in the United States of America and Canada..." to Plaintiff (Gagliardi Aff., Ex. 1.) While the Copyright Agreement appears to have omitted the spreadsheet defining "the Work," this is additional evidence that Golden Boy Promotions granted Plaintiff the license to the sole legal production of the fight within the United States.

interpretation make it clear that no such joint action is required.³ Defendants cite two sentences from the Agreement, which state that 1) "Promoter and [Plaintiff], acting jointly shall have the right to commence or settle any claim or litigation arising out of an alleged piracy," and 2) that "[Plaintiff] shall notify Promoter in writing and/or shall consult with Promoter as may be necessary or beneficial to do so before commencing or settling any such claim or litigation." (Defs.' Statement of Facts ("DSOF") ¶ 2.) The plain language of the second sentence makes clear that the requirement is not mandatory; rather, Plaintiff must notify or consult with the Promoter only as it is necessary or beneficial. The first sentence, by itself and out of context, is ambiguous as to whether there is a joint action requirement. However, read in the context of the Agreement's following paragraph, which contains the more specific provision that "Licensee shall have the right to identify and prosecute as may be necessary all acts of alleged piracy of the Event," it is evident that Plaintiff, as the Licensee, has a right to individually prosecute alleged acts of piracy. (Doc. 41-2, Ex. 1 at 5.) *See Shelton v. Shelton*, 119 Nev. 492, 497 (Nev. 2003).

### B. Leila Venegas Alcantara's Vicarious Liability

The Court will deny both Plaintiff's Motion for Summary Judgment and Defendants' Cross Motion for Summary Judgment on the issue of Ms. Alcantara's vicarious liability. To hold an individual liable in his or her personal capacity, Plaintiff must demonstrate that Ms. Alcantara had "a right and ability to supervise the violations and that she had a strong financial interest in such activities." *G & G Closed Circuit Events, LLC v. Miranda*, No. CV-13-2436-HRH, 2014 WL 956235, at *1 (D. Ariz. Mar. 12, 2014). "The essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps,

---

³ Plaintiff's citations to *G&G Closed Circuit Events, LLC v. Arvizu*, No. CV-18-1386-HRH, 2019 WL 4860680 (D. Ariz. Oct. 2, 2019) and *G&G Closed Circuit Events, LLC v. Almeda*, No. CV-18-00672-CDB (D. Ariz. Feb. 18, 2020), where the Court held that the license agreements mandated joint action, are inapposite. In those cases, the agreements did not contain a provision granting the licensee the right to individually prosecute alleged piracy. (Pl.'s Reply at 5-7.) And, importantly, it was mandatory, rather than "as may be necessary or beneficial," that the licensee notify the promoter before commencing litigation. *Arvizu*, 2019 WL 4860680 at *2 ("Promoter and Licensee shall notify each other in writing and shall consult with each other and mutually agree before commencing or settling such claim or litigation…"); *Almeda*, No. CV-18-00672-CDB at 9 (same).

- 6 -

regardless of how substantial the benefit is in proportion to a defendant's overall profits." *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004).

Plaintiff produced evidence that Ms. Alcantara was a managing member and statutory agent of the LLC and is identified on Casita Del Mar's Arizona Department of Liquor Licenses and Control license as the Licensee/Agent. This is sufficient to find that she had the requisite ability to supervise the restaurant's violations. *See J&J Sports Prods. Inc. v. Rubio*, No. CV-16-01111-JJT, 2017 WL 3234939 at *4 (D. Ariz. July 31, 2017); *G&G Closed Circuit Events, LLC v. Gonzalez*, No. CV-18-02843-PHX-SMB at 9-10.

However, there is conflicting evidence whether Ms. Alcantara had the requisite financial interest in the infringing activity. Ms. Alcantara's positions in the LLC and restaurant are insufficient to establish such a financial interest as a matter of law. *Id.*; *Rubio*, 2017 WL 3234939 at *4. And, there is no evidence that Casita Del Mar raised food and drink prices or charged an admission fee, which would signal such a financial interest. *Cf. G&G Closed Circuit Events LLC v. Alexander*, No. CV-02886-MTL, 2020 WL 1904628 at *2 (D. Ariz. Apr. 17, 2020). Plaintiff did produce evidence that Defendants advertised the Program once on the restaurant's Facebook page. However, Defendants have proffered controverting evidence through Ms. Alcantara's sworn declaration that the number of patrons in attendance the night of the Program was consistent with other Saturday nights. (DSOF ¶ 7, Declaration of Leila Venegas Alcantara ¶¶ 8-9.) Because Plaintiff has not produced any evidence that patrons attended Casita Del Mar because of the Program or were influenced by the advertisement, Defendants' evidence, if credited by a jury, is sufficient to create an issue of fact as to whether the exhibition of the fight led to any financial benefit. *See Rubio*, 2017 WL 3234939 at *4 (granting defendant summary judgment on the issue of individual liability because plaintiff "has provided no evidence that the event was a draw for any patrons.").[4]

---

[4] Plaintiff is correct that *Rubio* is distinguishable because defendants did not advertise the fight. However, as in the instant case, defendants in *Rubio* did not proffer evidence that the event increased business or that a single patron attended the restaurant because of the event. *Rubio*, 2017 WL 3234939 at *4. Furthermore, in *Rubio*, this Court not only denied summary judgment for plaintiff, but also granted it for the defendants. *Id.* The Court will not do that here. Just as Defendants' evidence that the showing of the fight did not lead to

Defendants correctly point out that Plaintiff had ample time during discovery to take depositions and request documents relevant to Ms. Alcantara's financial interest. Such discovery could have answered questions on whether there was an uptick in business on the night of the Program or whether the advertisement influenced a patron's decision to attend. It appears Plaintiff intended to take such discovery, as it informed the Court that it planned to serve Defendants with Interrogatories, Requests for Production, and Requests for Admission as well as depose Defendants, Defendants' personnel who were working on the night in question, patrons in attendance on the night in question, and even one or more of the vehicle owners identified as having parked in a lot adjacent to or upon one or more of the Defendants' properties. (Doc. 28, Joint Proposed Case Management Plan at 8.)

However, with the exception of the Mandatory Initial Discovery Requests, Plaintiff did not take any of these steps. This is of course Plaintiff's prerogative and the Court will not penalize a party for its litigation strategy. But Plaintiff cannot now rely on one advertisement as sufficient evidence of financial interest and ask the Court to ignore Defendants' sworn declaration. Therefore, for purposes of summary judgment motion practice, the Court will credit Defendants' evidence that the number of patrons was consistent with any other Saturday night, which could illustrate that the Program was simply an added benefit as opposed to evidence of an obvious and direct financial interest. *See Ellison*, 357 F.3d at 1079 (distinguishing between infringing content being a draw versus merely an added benefit). This controverting evidence precludes summary judgment on the issue of Ms. Alcantara's personal liability.

### C.     Damages

As an exclusive licensee of live closed-circuit distribution rights to the Program in America, Plaintiff is an "aggrieved person" under the statute and can bring a private right of action for either actual damages, including any profits of the violator that are attributable to the violation, or statutory damages "in a sum of not less than $1,000 or more than

---

increased sales or patronage is sufficient for them to avoid summary judgment, the advertisement is sufficient for Plaintiff to create an issue of material fact as to whether Ms. Alcantara had a direct financial interest in the showing of the Program.

$10,000" for each violation. 47 U.S.C. §§ 605(a), (d)(6), (e)(3)(C)(i). Courts may increase the damage award by an amount not to exceed $100,000 for each willful violation of the statute. *Id.* at § 605(e)(3)(C)(ii).

Plaintiff requests $10,000 in statutory damages, as well as $20,000 in enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). (MSJ at 11-12.) Defendants respond that if any damages are warranted, the Court should reduce the award of damages to a sum of not more than $250 because Defendants were unaware of any violation. (Defs.' Resp. & CMSJ at 16.) Courts have employed a variety of formulas in determining discretionary enhanced awards. See, e.g., *J & J Prods., Inc. v. Twiss*, 2012 WL 1060047 (D. Colo. Mar. 29, 2012); *Kingvision Pay-Per-View, Ltd.*, 2002 WL 393091, at *4. Specifically, courts have considered the licensing fee, the amount of televisions and patrons, advertising, and the estimated profits gleaned from the unauthorized broadcast. *Id.*

Defendants are a first-time offender. There is no evidence that they charged a cover price, raised prices on food and drink, or profited in any substantial way from showing the fight. Defendants further contend that they were unaware that showing the fight on SKY Television violated § 605 and Plaintiff has not produced any controverting evidence on that issue. However, the Facebook advertisement does illustrate that Defendants, at the least, saw the fight as a benefit for potential customers. There is no evidence that it did attract additional customers, but it supports the Court's awarding more than nominal damages. Therefore, the Court finds that statutory damages in the amount of $2,500 are appropriate because that is the amount Defendants would have had to pay to legally broadcast the fight. (PSOF ¶ 11; Gagliardi Aff. ¶ 8.) The Court additionally finds that enhanced damages of $5,000 are warranted.[5] Importantly, Plaintiff should understand that

---

[5] Plaintiff correctly argues that the Court's previous decision granting default judgment in the amount of $10,000 statutory damages and $20,000 enhanced damages against Defendant Eladio Monroy is not dispositive. *G&G Closed Circuit Events LLC v. Alcantara*, No. CV-18-02836, 2020 WL 1047058 (D. Ariz. Mar. 4, 2020) Defendants have provided the Court with evidence that was unavailable at the time it made its decision, including Ms. Alcantara's declaration that the Restaurant's business did not increase on the night of the Program and that this was Defendants' first time in violation of § 605.

its status as a first-time offender played a significant role in this Court's decision. Plaintiff should not expect such leniency from courts for a subsequent violation.

### D. Attorneys' Fees and Costs

Plaintiff requests costs and attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). Because the Court will grant Plaintiff's Motion for Summary Judgment as to LLC's liability, Plaintiff is indeed entitled to seek reasonable attorneys' fees and costs.

**IT IS THEREFORE ORDERED** granting in part Plaintiff G&G Closed Circuit Events, LLC's Motion for Summary Judgment Re: Giselle LLC's Liability (Doc. 41);

**IT IS FURTHER ORDERED** denying in part Plaintiff G&G Closed Circuit Events, LLC's Motion for Summary Judgment Re: Defendant Leila Venegas Alcantara's Liability (Doc. 41);

**IT IS FURTHER ORDERED** denying Defendants Giselle LLC and Leila Venegas Alcantara's Cross Motion for Summary Judgment (Doc. 51);

**IT IS FURTHER ORDERED** awarding damages in the amount of $2,500 in statutory damages and $5,000 in enhanced damages for a total of $7,500 against Giselle LLC.

**IT IS FURTHER ORDERED** granting Plaintiff's request for attorneys' fees. Plaintiff shall file any application for fees within 14 days of the date that the issue of Ms. Alcantara's liability is resolved.

**IT IS FURTHER ORDERED** that the issue of Ms. Alcantara's liability will proceed to trial, and the Court will set a pre-trial status conference by separate Order.

Dated this 31st day of March, 2021.

Honorable John J. Tuchi
United States District Judge